## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **SUSAN SRAIL** and **JEFFREY SRAIL**, **JANEEN BRZECZEK**, and **RONALD BRZECZEK**, Individually, on Behalf of All Persons Similarly Situated, and in the Capacity as Parents and Next Friends of Their Minor Children, **RYAN SRAIL**, **DEREK SRAIL**, and **HANNAH BRZECZEK**, | ) ) ) ) ) ) ) ) | Case No. 07 C 2617 |
| | ) | Honorable Matthew F. Kennelly |
| Plaintiffs, | ) ) | Magistrate Judge Michael T. Mason |
| v. | ) ) | |
| **VILLAGE OF LISLE**, an Illinois municipal corporation, | ) ) ) ) | |
| Defendant. | ) ) | |
| | ) | |
| **VILLAGE OF LISLE, ILLINOIS,** | ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| **ILLINOIS-AMERICAN WATER COMPANY,** | ) ) ) | |
| Third-Party Defendant. | ) ) | |

## PLAINTIFFS' OPPOSITION TO
## DAVID ADER'S MOTION TO QUASH SUBPOENA

### INTRODUCTION

David Ader's motion to quash Plaintiffs' subpoena should be denied for the following reasons (which are developed further throughout this brief):

(1)     The Village of Lisle has waived any privilege relating to Ader because it plainly intends to invoke an "advice of counsel" defense, pursuant to which it will try to win this case by explicitly relying upon advice he rendered to the Village in 2005 and 2006.[1]

(2)     Plaintiffs do not seek to depose Ader concerning any work he has done for the Village since this case was filed, and thus the case upon which Ader's motion primarily depends, *Shelton v. American Motors*, 805 F.2d 1323 (8th Cir. 1986), does not even apply.    Rather, Plaintiffs seek discovery of Ader's pre-litigation work (in 2005 and 2006) for a Village-created "Water Task Force," on behalf of which Ader made public speeches and authored publicly-distributed memos describing his work and conclusions on topics directly at issue in this case, including: the ownership of the water system in the proposed Class Area; whether the Village could enforce its own ordinances against Illinois-American to compel the company's compliance with water system safety standards; and the strategic options available to the Village to deal with the water system's problems.

(3)     The privileges invoked by Ader to quash the subpoena are not his to invoke.  The attorney-client privilege, and the so-called "legislative" and "deliberative process" privileges—even if they exist and have not been waived—belong to the Village, not to Ader.  The Village has *not* joined Ader in his motion, or otherwise asked this Court to forbid Ader's deposition.

(4)     To the extent that any privilege ever existed for Ader's pre-litigation work, it was waived by his repeated disclosures of his work and conclusions at public meetings and in publicly-distributed memos.

---

[1]   Not only have Village deponents already explained the Village's behavior through explicit reliance on Ader's advice, but also, when Plaintiffs recently offered to withdraw their subpoena for Ader's deposition if the Village would disclaim any "advice of counsel" defense relating to Ader, the Village was unwilling to advise Plaintiffs of its position on the matter.

Accordingly, Ader should be required to comply with Plaintiffs' subpoena. If the Village truly believes that any question posed by Plaintiffs in Ader's deposition invades a legitimate, non-waived privilege, its rights are well protected, as it may object and instruct Ader not to answer.

## FACTS

### *Ader Was Hired To Work On The*
### *"Water Task Force" Well Before This Case Was Filed*

Ader was hired by the Village in 2005 to participate in a "Water Task Force" ("Task Force"), created by the Village to research the Illinois-American-operated water system that is at issue in this case. Specifically, the Task Force was formed "to investigate, study and find facts" with respect to the difference between the water service received in the Oak View and Meadows subdivisions (the proposed Class Area), and the service received in the remainder of the Village. *See* Resolution Creating Task Force, attached as Exhibit A, at p. 2, sec. 1.

As part of his involvement with the Task Force, Ader attended Task Force meetings, conducted research for the Task Force, and rendered opinions (which he shared with the Task Force and otherwise publicly), on the topics of, *inter alia*, the residents' ownership of the water and sewer systems in Oak View and the Meadows; the enforceability of Village ordinances as applied to Illinois-American Water Company; and the options available to the Village to help the residents of the Oak View and Meadows subdivisions with their serious water system problems. *See* September 2, 2005, Ader Memorandum on ownership issues, attached as Exhibit B; June 27, 2005, Ader Memorandum on the enforceability of ordinances, attached as Exhibit C; and May 26, 2005, Ader Memorandum on strategic options, attached as Exhibit D.

### *Ader's Work And Conclusions Were Repeatedly Disclosed To The Public*

The members of the Task Force—with whom Ader communicated on a regular basis—were primarily private citizens residing in the Oak View subdivision, including two of the Plaintiffs in this case, Susan Srail and Janeen Brzeczek.

Ader's work for the Task Force was public. Task Force meetings were public meetings, to which the public was invited to attend. *See* Exhibit A, p. 4, sec. 6 ("The Task Force…shall comply with all requirements of the Illinois Open Meetings Act."); *see also* Minutes of May 6, 2005 Task Force Meeting, attached as Exhibit E, at p. 1 ("It was confirmed that the meeting minutes would be placed on the Village's web site. There was confirmation that the task force meeting is public, and can be attended by the public.").

Many of Ader's memoranda were publicly disclosed. For example, Ader's memoranda on ownership issues, the enforceability of the Village's fire flow ordinances, and options available to the Village were all distributed at the publicly-held Task Force meetings. *See* Minutes of June 2, 2005 Task Force Meeting, attached as Exhibit F, at p. 1 (stating, "The group reviewed [Ader's] letter consisting of 14 options"); *see also* July 21, 2005 Task Force Meeting Minutes, attached as Exhibit G, at p. 1 (stating, "Mr. Ader began to address the options from his May 26th correspondence,"); August 25, 2005 Task Force Meeting Minutes, attached as Exhibit H, at p. 1 ("[Mr. Ader] proceeded to discuss the issue of ownership of the water main lines by the property owners of the subdivision."). Additionally, Ader's memoranda on the enforceability of the Village's fire flow ordinances and options were attached as exhibits to the Task Force's final report, a document made publicly available and additionally disclosed by the Village of Lisle in this present litigation. *See* Exhibit C; Exhibit D; *see also* November 2, 2007, E-mail correspondence from Brandon Lemley to Aaron W. Rapier, attached as Exhibit I, (stating

"[w]here there was a clear waiver (i.e. the two memos attached to the task force report), we have not asserted privilege for them.").

Ader was also invited to attend Village Board meetings which were not only open to the public, but also televised. Ader was invited to speak on, *inter alia*, the topics disclosed in his Task Force memoranda. Accordingly, Ader made the following public representations:

- On January 30, 2006, Ader provided a detailed opinion on the ownership of the Illinois-American-operated system at a Village Board Meeting. Ader offered opinions on adverse possession, the 1971 Supreme Court case considering these very ownership issues and his conclusion that "there is some reason to believe that there is a claim of [resident] ownership." *See* January 30, 2006 Village of Lisle Board Meeting Minutes, attached as Exhibit J, at p. 2; *see also id.* at, p. 6 ("Attorney Ader commented that it is his opinion that if the lines were put in by the developer, a strong argument could be made that if the pipe is not in the easement, that pipe was transferred to the buyer [i.e., the residents] along with the lot.").

- Also on January 30, 2006, Ader publicly offered his opinions on the enforceability of the Village's fire flow ordinances as against Illinois-American. *See id.*, at p. 6 ("Attorney Ader said that the Village has no direct ability to pass an ordinance that is binding on Illinois American because they are pre-empted by the regulations of the ICC.").

- Ader has also weighed in, publicly, on the options available to the Village to redress the problems with the water system in the Oak View area. *See id.*, at p. 6-7 ("Attorney Ader said that before filing a complaint, there should be strategy." "Attorney Ader said that if we tell Illinois-American to get out, they may be motivated to take action.").

### *The Village Has Invoked, And Intends*
### *Further To Invoke, An "Advice of Counsel" Defense*

During the course of the present lawsuit, the Village has also put at issue Ader's work and opinions. For example, Village witnesses have offered Ader's advice as justification for the Village's action and inaction:

- Assistant Village Manager, Mary Lou Kalsted testified that, regarding the Village's investigation into the ownership of the water and sewer systems in the area, the Task Force "turned [documents] over to David Ader, and I believe David Ader evaluated them and provided a memo or something back to Manager

Sprecher and the task force about what he saw in the documents." *See* Deposition of Mary Lou Kalsted, attached as Exhibit K, at p. 107. Ms. Kalsted later confirmed that Ader evaluated the ownership issue for the Task Force, and "shared [his conclusion] with the task force." *Id.* at p. 193; *see also* October 23, 2007, Deposition of Gerald C. Sprecher, attached as Exhibit L, at p. 64 ("Village staff researched documents at the county courthouse and by soliciting ownership documents from individual homeowners, and all of those documents were turned over to the attorney [i.e., Ader] for review.").

- Village Manager Sprecher also testified that the reason Lisle was not enforcing its own ordinance as against Illinois-American was that "[o]ur attorney [Ader] provided the opinion that it was not enforceable because [Illinois-American was] under the…purview of the ICC." Deposition of Gerald C. Sprecher, dated August 7, attached as Exhibit M, at p. 95. *See also* Exhibit L, at pp. 8-9 (Sprecher responding, when asked why the Village was not enforcing its ordinances as against Illinois-American, that "[w]ell, we requested a response or an opinion from our legal counsel [Ader] as to whether there was anything we could do to enforce that ordinance and the Village attorney did respond to us" [and the Village received, from its attorney, Ader] "a correspondence that I believe there are copies of, and [the attorney] indicated that the ordinance as it applied to Illinois-American was not enforceable because of ICC oversight.").

- Further, before filing this opposition brief, Plaintiffs' counsel offered to the Village that they would withdraw their subpoena for Ader's deposition if the Village agreed that it would not rely on Ader's advice in the Village's defense in this case. The Village was unwilling to advise Plaintiffs of its position in response to their offer. *See* November 12, 2007, E-mail correspondence from Aaron W. Rapier to Brandon Lemley and Chloe Woodard, attached as Exhibit N.

## ARGUMENT

### A. Because The Village Plainly Intends to Invoke The "Advice of Counsel" Defense, Any Privilege Has Been Waived

Ader's motion ignores entirely the fact that the Village intends to explicitly rely upon— and introduce into evidence—Ader's advice in its defense in this case. Accordingly, "fundamental fairness" compels the conclusion that Ader's work and conclusions may not remain a secret. The Village (and Ader) may not use privilege as both a sword and shield. *See Aspex Eyewear v. E'lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1092-93 (D. Nev. 2003) (finding that when a party asserts reliance on the advice of its counsel as a defense, "[f]undamental fairness compels

the conclusion that a litigant may not use reliance on advice of counsel to support a claim or defense as a sword in litigation, and also deprive the opposing party the opportunity to test the legitimacy of that claim by asserting the attorney-client privilege or work-product doctrine as a shield"); *see also Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D. Ill. 1978) (finding that, in a breach of fiduciary duty case, when party asserted reliance on counsel as part of its defense, it waived attorney-client privilege "with respect to all communications, whether written or oral, to or from counsel, concerning the transactions for which counsel's advice was sought"); *aaiPharma, Inc. v. Kremers Urban Development, Co.*, 361 F. Supp. 2d 770, 774-75 (N.D. Ill. 2005) (allowing for the deposition of opposing trial counsel, despite claims of attorney-client and work-product privileges, when defendant claimed reliance upon the advice of that counsel as part of its defense).

### B.     *Shelton Does Not Apply; Plaintiffs Do Not Seek Ader's Work And Client Communications In This Case*

While Ader's motion relies nearly exclusively on the Eighth Circuit's 1986 decision in *Shelton v. American Motors*, 805 F.2d 1323 (8th Cir. 1986), the Eighth Circuit itself has said that *Shelton* does not bar access to discovery like that sought from Ader by Plaintiffs. In *Shelton*, the court had refused to require defense counsel to answer deposition questions put to her by her opposing counsel concerning the completeness of defense counsel's document production in that same case. Understandably, the court reasoned that requiring such answers would improperly cause defense counsel to have to reveal the "mental selective process" she had employed in representing her client in that case. *Id.* at 1329.

However, in *Pamida v. E.S. Originals, Inc.*, 281 F.3d 726, 730-31 (8th Cir. 2002), the Eighth Circuit explained that the *Shelton* test did not apply to bar discovery sought from counsel of record in an existing case, where the discovery concerned counsel's behavior and knowledge

of matters which pre-dated that case. Thus, in *Pamida*, the court refused to invoke *Shelton* to bar the depositions of attorneys of record in a then-pending indemnification action, where the discovery sought from those attorneys concerned the reasonableness of their fees and advice in the underlying, but already concluded, patent infringement action which gave rise to the indemnification case. *Id.* at 730-31. "In such circumstances," concluded the court, "deposing opposing counsel may not only be the most expedient approach, but the only realistically available approach." *Id.* at 730.

This reasoning is well-applied here. Because Ader's work and advice rendered prior to this case form a principal basis of the Village's defense, deposing Ader is both the "most expedient" and "only realistically available" approach for Plaintiffs to find out what he said and did. *Id.*

### C.     Ader May Not Assert the Privileges Claimed In His Motion

While Ader claims that the discovery which Plaintiffs seek with their subpoena invades the attorney-client, "legislative" and "deliberative process" privileges, none of these privileges (even if they should exist here) are Ader's to assert. *See In re Special September 1978 Grand Jury (II)*, 640 F. 2d 49, 62 (7th Cir. 1980) ("[T]he attorney-client privilege belongs to the client alone"); *Gravel v. United States,* 408 U.S. 608, 622 (1972) (finding that the legislative privilege belongs to the legislator); *see also* A Charles Alan Wright & Kenneth W. Graham, Federal Prac. & Proc. § 5675 (2007) (finding that the legislative privilege "belongs to the legislator whose legislative act is involved in the evidence"); *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) (finding that the only party allowed to claim the "deliberative process" privilege is the "head of the department which has control over the matter, after actual personal consideration [of whether the privilege applies] by that officer").

That Ader should not be permitted to assert privileges that don't belong to him is especially clear here as his client, the Village, is not only not challenging Plaintiffs' right to take Ader's deposition, but instead is explicitly relying for its defense in this case upon advice that Ader has given it.

**D.    *Any Privilege Has Been Waived By Ader's Repeated Public Disclosure Of His Work And Conclusions***

While Ader's repeated disclosure of his work and conclusions at public meetings and in publicly-distributed memos strongly demonstrates that no privilege ever existed, at a bare minimum it also proves that any privilege that which may have previously existed has been waived. *See Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989) (finding that "voluntary disclosure by the holder [i.e., the client] of the attorney-client privilege is inconsistent with the attorney-client confidential relationship, and thus waives the privilege"); *United States v. Nobles*, 422 U.S. 225, 240 (1975) ("The privilege derived from the work-product doctrine is not absolute.  Like other qualified privileges, it may be waived."); *In re Bank One Sec. Litig.*, 209 F.R.D. 418, 423 (N.D. Ill. 2002) ("The voluntary disclosure of attorney work-product to an adversary waives work-product protection."); *Trombetta v. Bd. of Educ. Proviso Tp. High School Dist. 209*, No. 02 C 5895, 2004 WL 868265, *4-5 (N.D. Ill. April 22, 2004) (finding that the legislative privilege was waivable, and in fact waived, when the purportedly "privileged" information was already disclosed); *Howard v. City of Chicago*, No. 03-C-8481, 2006 WL 2331096, * 7-8 (N.D. Ill. Aug. 10, 2006) (finding that "[p]rivileges relating to governmental decision-making may be waived," and holding that when governmental official openly and repeatedly discussed allegedly "privileged" issue, any such privilege which may have existed, was waived).

## CONCLUSION

For the reasons stated in this brief, Plaintiffs respectfully request that David Ader's motion to quash Plaintiffs' subpoena be denied.

Dated: November 15, 2007                     Respectfully Submitted,

                                             By: _____
                                             One of Plaintiffs' Attorneys

Shawn M. Collins                     Norman B. Berger
Edward J. Manzke                     Michael D. Hayes
Aaron W. Rapier                      VARGA BERGER LEDSKY HAYES & CASEY PC
Julie B. Anderson                    Santa Fe Building
THE COLLINS LAW FIRM, P.C.           224 South Michigan Ave.
1770 N. Park Street                  Suite 350
Suite 200                            Chicago, Illinois 60604-2507
Naperville, Illinois 60563           (312) 341-9400
(630) 527-1595

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **Plaintiffs' Opposition to David Ader's Motion to Quash Subpoena** was electronically served on all counsel of record as a result of the CM/ECF filing of this document on November 15, 2007.

By: _____
One of Plaintiffs' Attorneys

Shawn M. Collins
Edward J. Manzke
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street
Suite 200
Naperville, Illinois 60563
(630) 527-1595

Norman B. Berger
Michael D. Hayes
VARGA BERGER LEDSKY HAYES & CASEY
Santa Fe Building
224 South Michigan Avenue
Suite 350
Chicago, Illinois 60604-2507
(312) 341-9400