# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSAN SRAIL, et al., | ) |
|         Plaintiffs, | ) |
| vs. | ) Case No. 07 C 2617 |
| VILLAGE OF LISLE, | ) |
|         Defendant and Third Party Plaintiff, | ) |
| vs. | ) |
| ILLINOIS-AMERICAN WATER CO., | ) |
|         Third Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this decision, the Court considers two pending matters: attorney David Ader's motion to quash deposition subpoenas served upon him by the plaintiffs and the third party defendant, and the plaintiffs' motion to compel the third party defendant to produce certain documents. For the reasons stated below, the Court denies both motions.

## Background

The plaintiffs in this case have sued the Village of Lisle for violation of their rights under the Constitution's Equal Protection Clause, common law negligence, and unlawful taking of their property in violation of the Illinois Constitution. The plaintiffs' claims concern the existence and operation of a privately-run water system which plaintiffs contend provides them with deficient service, thus damaging the value of their property. In their equal protection claim,

plaintiffs contend that Lisle's refusal to connect them to the municipal water system is irrational and discriminatory. In their "taking" claim, plaintiffs contend that they are the owners of the water system and that the Village has permitted the private water company, Illinois American Water Co. (IAWC), to take their property by allowing IAWC to operate the system. This is somewhat of an oversimplification of plaintiffs' claims, but it will suffice for present purposes.

The lawsuit was filed in May 2007. The plaintiffs originally sued IAWC as well as Lisle. The Court dismissed the plaintiffs' claims against IAWC. Later, IAWC was brought back into the case via a third party claim asserted by Lisle. In the third party claim, Lisle seeks, among other things, indemnification from IAWC for any damages it is required to pay to plaintiffs.

## Discussion

**1.     Ader's motion to quash**

Lisle is represented in this case by attorneys from the law firm of Querrey & Harrow and attorneys from the law firm of Ancel, Glink, Diamond, Bush, DiCianni & Rolek. David Ader, an attorney with the Ancel firm, is one of the lawyers who has an appearance on file in the case.

In or about 2005, a shade under two years before this lawsuit was filed, Lisle created a "water task force" to investigate, study, and find facts relating to alleged deficiencies in the service provided by the IAWC water system to the areas in which the plaintiffs reside. The members of the task force consisted primarily of private citizens, including two of the plaintiffs in this case, Susan Srail and Janeen Brzeczek, who were residents of one of the areas to which IAWC provides water service. The task force held meetings in public and was required to comply with the requirements of the Illinois Open Meetings Act. Its meetings were televised, and minutes of the meetings were placed on Lisle's web site.

Lisle hired Ader to perform legal services in connection with the work of the task force. Among other things, he attended meetings of the task force, conducted research, and rendered opinions to the task force. His opinions concerned who owned the water and sewer systems in the areas in question, the enforceability of Lisle ordinances as applied to IAWC, and the options available to Lisle to help residents deal with problems with the water system. Ader's memoranda on these topics were shared with the task force and were otherwise made public. In his memorandum concerning available options, he listed and briefly discussed fourteen potential options, including discussions with the county water commission, renegotiating Lisle's agreement with IAWC or alteration of certain fees, various potential changes to the physical setup of the water system, condemnation of a portion of the IAWC water system, fighting proposed rate increases before the Illinois Commerce Commission, changes in state legislation, and decertification of IAWC's service.

Both plaintiffs and IAWC have subpoenaed Ader for a deposition and for production of documents. Ader has moved to quash the subpoenas. He argues that it is inappropriate to take the deposition of counsel for an opposing party in litigation and that the plaintiffs and IAWC have failed to show the necessary justification for taking his deposition. He also argues that the matters on which the other parties seek to depose him are protected by one or more of several privileges: the attorney-client privilege, the work product doctrine, the legislative privilege, and the deliberative process privilege.

The Court rejects Ader's argument that it is presumptively inappropriate for the other parties to take his deposition. Both plaintiffs and IAWC have expressly disavowed any intention to question Ader regarding any matters postdating the filing of this lawsuit. Rather, they seek to

question him only with regard to the work he performed on behalf of the water task force. For this reason, *Shelton v. Am. Motors Corp.,* 805 F.2d 1323 (8th Cir. 1987), the primary case Ader cites as establishing a presumption of sorts against depositions of trial counsel, does not govern the present case. The *Shelton* analysis does not apply when the topics of deposition involve counsel's knowledge of a prior underlying matter that is relevant to the current litigation. *See Pamida v. E.S. Originals, Inc.,* 281 F.3d 726, 730 (8th Cir. 2002) ("*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial."). A party cannot insulate an attorney who has otherwise relevant knowledge from the processes of discovery by having that attorney file an appearance in the pending case. *See aaiPharma, Inc. v. Kremer Urban Devel. Co.,* 361 F. Supp. 2d 770, 775 (N.D. Ill. 2005). Ader has knowledge that is unquestionably relevant regarding, among other things, the question of who owns the water system, a key disputed issue regarding the plaintiffs' "taking" claim.

The Court also rejects Ader's claims of work product and attorney-client privilege. First, the work product doctrine "shields materials that are prepared in anticipation of litigation from the opposing party, on the theory that the opponent shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy . . . ." *Mattenson v. Baxter Healthcare Corp.,* 438 F.3d 763, 767-68 (7th Cir. 2006) (citations omitted). The doctrine applies, however, only when the material at issue "can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976-77 (7th Cir. 1996) (emphasis in original; citations omitted). That requirement is not

met with regard to Ader's opinions that were conveyed to the water task force or the work that went into preparing those opinions; though Ader noted that litigation was one of many possibilities, there is nothing in the record to suggest that the prospect of litigation had anything to do with his retention or the work he did. "'The mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the work product privilege; the privilege is not that broad.'" *Id.* at 976 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983)).

Second, neither Ader nor Lisle has established that the attorney-client privilege prevents the disclosure of the matters about which IAWC and the plaintiffs apparently intend to inquire. First, the Court is somewhat dubious regarding whether the privilege applies at all in this context, given the presence on the task force of members of the public and the absence of any evidence suggesting that they believed they had an attorney-client relationship with Ader or that they were somehow acting as a surrogate for Lisle itself. Second, there is no suggestion that Ader will be called upon at the deposition to disclose communications made by his client (whoever or whatever it was) for the purpose of obtaining legal advice. Third, and perhaps most importantly, even if the privilege applies, it has been waived. Lisle made no attempt to object or otherwise intervene when IAWC's counsel questioned the two plaintiffs who served on the task force about their communications with Ader. This failure to object amounts to a waiver of the privilege. *See United States v. Sanders,* 979 F.2d 87, 92 (7th Cir. 1992); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 461 (N.D. Cal. 1978); *see also, Rowe Int'l Corp. v. Ecast, Inc.,* 241 F.R.D. 296, 301 (N.D. Ill. 2007). Having waived the privilege in this regard, Lisle has waived it regarding all communications regarding the same subject matter. *See, e.g., Schofield v.*

*U.S. Steel Corp.,* No. 2:04-cv-520-PRC, 2005 WL 3159165, at *2 (N.D. Ind. Nov. 28, 2005); *see also, Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed. Cir. 2005) (applying Seventh Circuit law).

Finally, the Court rejects Ader's assertion of the legislative and deliberative process privileges. Neither Ader nor Lisle has made anything other than a token effort to assert these privileges, and they have done nothing to attempt to establish their applicability. Because the burden of establishing that a privilege applies lies with the party asserting the privilege, *see United States v. BDO Seidman,* 337 F.3d 802, 811 (7th Cir. 2003) (attorney-client privilege), their failure to lay the predicate for the applicability of these privileges is fatal to their claim. In any event, the deliberations of the water task force appear to have been conducted entirely in the open; the plaintiffs and IAWC say they seek to discover only the basis for the opinions that Ader conveyed to the task force, not anything about how the task force went about arriving at whatever conclusions it reached.

**2.     Plaintiffs' motion to compel**

The plaintiffs have moved to compel IAWC to produce certain records of computer modeling relating to the water system at issue in the case. Specifically, plaintiffs seek computer modeling records – including the inputs used to generate results – for three proposed projects: the Oak View / Jonquil project, the Jonquil Interconnect project, and the Oak View Water Main project. IAWC has objected on the ground that any such materials were generated by a consulting expert for purposes of litigation and are therefore protected from discovery. In support of its objection, IAWC has submitted an affidavit by its Chicago-area operations manager, who states that IAWC retained a litigation consultant in April 2006 in response to a

6

complaint the Illinois Attorney General filed with the Illinois Commerce Commission regarding water pressure and hydrant adequacy in the Lisle area, as well the apparent threat of litigation by residents of Lisle, of which IAWC became aware in January 2006. IAWC has also submitted an affidavit by its principal counsel in the present case, who states that he directed IAWC to retain a non-testifying consulting expert to perform various analyses of the water system, to be used for litigation purposes.

Plaintiffs learned about the studies during the deposition of IAWC's president, Karla Teasley. Teasley testified that IAWC had looked at various alternatives to improve water flow in the area in question and stated that modeling had been done to estimate the impact of each alternative. Teasley also testified regarding the impact – in terms of "gallons per minute" of flow – of one of the possible improvements; with regard to another, she testified that some of the information generated by the modeling had been provided to a third party, specifically a school board that governs a school district in the affected area. IAWC interposed no objection at Teasley's deposition to plaintiffs' inquiries about the modeling work.

In its response to the motion to compel, IAWC says that its counsel "made a strategic decision" to share part of the modeling consultant's work with Teasley before her deposition but limited this to the consultant's conclusions about the resulting flows, withholding from Teasley the underlying information on which those conclusions were based. In opposing disclosure, IAWC relies on Federal Rule of Civil Procedure 26(a)(4)(B), which prevents a party from obtaining disclosure of facts known or opinions held by another party's expert retained in anticipation of litigation who is not expected to be called at trial, absent a showing of exceptional circumstances.

7

The supporting affidavits provided by IAWC are less than a model of clarity. Specifically, it is less than crystal clear whether the materials plaintiffs seek were prepared in 2006 in connection with the Illinois Attorney General's complaint before the ICC, or in 2007 as a result of the direction of IAWC's trial counsel in this case, or both. Having considered both affidavits, however, the Court infers that documents sought by the plaintiffs include materials generated in connection with both of those litigated matters. IAWC has provided evidence sufficient to establish that the analyses in question were conducted by an expert or experts retained in anticipation of litigation whom IAWC does not expect to call at trial.[1] For this reason, Rule 26(a)(4)(B) precludes discovery of the consulting experts opinions or the matters upon which they were based.

One might reasonably question whether IAWC's disclosure of some of the opinions provided by the expert results in a waiver of its objection to disclosure of the facts and methods underlying those opinions. In its initial response to plaintiffs' motion to compel, IAWC argued that no such waiver had occurred. In their reply, however, plaintiffs expressly disavowed any claim of waiver. *See* Pls.' Reply at 2 n.1.

In a hearing held on October 30, 2007, shortly after plaintiffs had filed their reply to IAWC's response, the Court inquired about the waiver issue and requested further briefing. In retrospect, this was a mistake on the Court's part. The Court should not have injected into the issue into the case after plaintiffs, who are represented by skilled counsel, chose to forego the

---

[1] If IAWC's intention not to call the expert(s) changes, it will be required to disclose the information in question, pursuant to Federal Rule of Civil Procedure 26(a)(2) (regarding disclosure of experts who will be called to testify) and/or 26(e) (regarding supplementation of earlier disclosures when circumstances change).

8

point. For this reason, the Court will not address whether a "subject matter waiver" principle applies to materials protected from discovery under Rule 26(b)(4)(B).[2]

In a surreply memorandum, plaintiffs contend that they have shown the "extraordinary circumstances" required to permit disclosure of materials otherwise undiscoverable under Rule 26(a)(4)(B). This contention came too late in the day to warrant its consideration. Plaintiffs made no such contention either in their motion to compel or in their reply, both of which were filed before the October 30 hearing at which all parties expected the Court to rule on the motion. At that hearing, as noted earlier, the Court requested further briefing on the issue of waiver. The Court did not request any submissions on the "extraordinary circumstances" issue and did not, by requesting further briefing on a single topic, reopen the matter for briefing entirely new issues.

**Conclusion**

For the reasons stated above, the Court denies David Ader's motion to quash [docket no. 118] and plaintiffs' motion to compel [docket no. 98].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 12, 2007

---

[2] The Court notes, however, that circumstances may arise later in the case by which IAWC may forfeit the protection of Rule 26(a)(4)(B) by, for example, using information generated from the modeling in its defense.

9