**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SUSAN SRAIL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 2617** |
| | ) | |
| **VILLAGE OF LISLE,** | ) | |
| | ) | |
| **Defendant and** | ) | |
| **Third Party Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ILLINOIS-AMERICAN WATER CO.,** | ) | |
| | ) | |
| **Third Party Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Susan Srail, Jeffrey Srail, Janeen Brzeczek, and Ronald Brzeczek have sued the Village of Lisle ("Lisle"), individually and as parents and next friends of their minor children Ryan Srail, Derek Srail, and Hannah Brzeczek. Plaintiffs allege that Lisle violated their rights under the United States and Illinois Constitutions and under Illinois common law in making decisions concerning the water system that supplies the area where they live and their children attend school. They have moved to certify two classes of plaintiffs pursuant to Federal Rule of Civil Procedure 23(b)(3). Both Lisle and third-party defendant Illinois-American Water Company

("IAWC") oppose class certification.[1]  For the reasons set forth below, the Court grants

plaintiffs' motion as to one of the classes they propose; as to the other proposed class, the Court

certifies a class consisting of residents of the subdivision where plaintiffs live, deferring

consideration of whether to certify a second class relating to a separate subdivision until after

identification of an appropriate class representative from that subdivision.

## Background

Plaintiffs have asserted claims relating to the water system serving Oak View, the Lisle

subdivision in which the Srails and Brzeczeks live, and Meadows, a subdivision in

unincorporated Lisle, as well as Lisle Junior High School and Schiesher Elementary School.

Plaintiffs allege that the system does not deliver adequate water pressure to fight fires in either of

the subdivisions or in the area of the two schools, endangering plaintiffs, the other residents of

Oak View and Meadows, and the children attending the two schools.[2]

Although Lisle has a municipally-owned water system, that system does not serve the

---

[1]  The plaintiffs currently have no claims pending against IAWC.  As a result, one might question IAWC's "standing"–for want of a better word–to oppose class certification.  IAWC's theory is that because Lisle has made third party claims for indemnity and contribution, it faces potential indirect liability and thus has a legitimate interest in opposing class certification.  The Court need not address the viability of IAWC's contention, as Lisle and IAWC have filed a joint brief in opposition to plaintiff's motion.

[2]  In their Third Amended Complaint, plaintiffs also make allegations concerning Lisle's alleged refusal to connect their subdivisions to the municipal sewer system, stating that they are served by a sewer system operated by IAWC.  *See* Third Am. Comp. ¶¶ 11-12, 19-20, 25, 27.  It is less clear whether they are asserting legal claims premised upon that decision by Lisle or upon any alleged inadequacy of the IAWC-run sewer system.  What is clear, however, is that plaintiffs are not pursuing any sewer-related claims as class claims.  Plaintiffs repeatedly characterize Lisle and IAWC's argument about the sewer system as a "straw man" argument, *see* Pl. Reply at 1, 11, 16, and state that the case is not about sewer service or sewer problems.  *See id.* at 5, 11, 16.  As a result, the Court will neither consider nor address the sewer system-related claims contained in plaintiffs' complaint as part of the present motion.

residents of Oak View and Meadows or the two schools. Instead, Lisle has contracted with IAWC to operate and maintain a water system exclusively supplying these areas. As part of the contract, Lisle sells Lake Michigan water from its own municipal system to IAWC, which then transmits and supplies that water to Oak View and Meadows and to the schools.

Plaintiffs filed this lawsuit on May 10, 2007. In their third amended complaint, filed on October 10, 2007, plaintiffs contend that Lisle's refusal to supply water to the schools and the subdivisions at adequate firefighting pressure and volume, despite supplying water to other, similarly situated persons and entities within Lisle and its unincorporated areas, deprived plaintiffs, other residents of Oak View and Meadows, and children attending the schools of their rights under the Equal Protection Clause. Plaintiffs make further claims against Lisle for common law negligence (for failing to connect Oak View and Meadows to the Municipal Water System) and for allegedly authorizing IAWC to "physically occup[y] and invade[]" the water system, in which plaintiffs claim a property interest, in violation of the Takings Clause of the Illinois Constitution. *See* Third Am. Compl. ¶ 74. Plaintiffs originally sued IAWC as well as Lisle, but the Court dismissed their claims against IAWC. Lisle has asserted third party claims against IAWC seeking, among other things, indemnification from IAWC for any damages it is required to pay plaintiffs, as well as a claim in which it asks the Court to adjudicate who, as between the residents and IAWC, owns the water system.

### Discussion

Plaintiffs seek certification of two separate classes. The proposed Schoolchildren Class would comprise all parents of children who attend or will attend the two schools in the school

year beginning August 22, 2007.[3]  The proposed Residential Class would comprise all individuals who own or reside in residential property in Oak View or Meadows and whose water systems are operated by IAWC.

To prevail on a motion for class certification, plaintiffs must satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the subsections of Rule 23(b).  Rule 23(a) sets out four threshold requirements for plaintiffs seeking class certification: numerosity (the class must be so large that "joinder of all members is impracticable"); commonality (there must be common questions of law or fact); typicality (the representatives' claims must be "typical" of those of the class); and adequacy of representation (the representatives must fairly and adequately protect the interests of the class").  Fed. R. Civ. P. 23(a)(1)-(4); *see Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any question affecting only individual members," and that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).  Having moved to certify the classes, plaintiffs bear "the burden of demonstrating that [class] certification is appropriate."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

---

[3]  Lisle and IAWC challenge plaintiffs' standing to bring this suit on behalf of the Schoolchildren Class on the ground that the real victims in the event of any fire would be the school and the school district, which owns the land and buildings that could suffer harm during a fire.  This argument rests on the improbable assumption that the only possible damage from a fire would be property damage, rather than harm to humans, and the Court rejects it.

## 1. Rule 23(a) requirements

### a. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Fed. R. Civ. P. 23(a)(1). Although courts cannot rely on pure speculation as to the size of the class, plaintiffs need not "specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). The proposed Schoolchildren Class consists of the Srails, the Brzeczeks, and all other parents of children attending either or both of the Schools in the school year beginning in fall 2007. Plaintiffs allege that approximately 900 children attend the two schools. Based on their calculation that approximately 900 families reside in Oak View and Meadows, plaintiffs allege that the proposed Residential Class consists of more than 2,000 persons. Lisle and IAWC dispute neither figure, nor do they contend that plaintiffs cannot satisfy the numerosity requirement for either proposed class. Plaintiffs have demonstrated that the members of both proposed classes are sufficiently numerous that their joinder as individual parties would be impracticable.

### b. Commonality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*, 149 F.3d at 594. A common set of operative facts is ordinarily present when the defendants are claimed to "have engaged in standardized conduct towards members of the proposed class." *Id.*

Plaintiffs' claims present questions of both law and fact common to all class members. Plaintiffs contend that Lisle engaged in a common course of conduct with respect to the entire

water system serving Oak View, Meadows, and the Schools, and that Lisle's conduct has harmed all members of both proposed classes. The legal issue of whether Lisle's standardized conduct constitutes an equal protection violation or is actionable under state law is likewise common to all proposed class members. Lisle and IAWC do not dispute that plaintiffs can satisfy the commonality requirement for either proposed class. The Court finds that both proposed classes meet the commonality requirement.

### c. Typicality

The typicality requirement of Rule 23(a)(3), which is closely related to the commonality requirement of Rule 23(a)(2), is met if the class representatives' claims are typical of the class. The named plaintiffs' claims are typical if they "[arise] from the same event or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). Factual distinctions between the claims of the named and represented plaintiffs do not defeat typicality. *Retired Chicago Police Ass'n*, 7 F.3d at 597. The claims of the named plaintiffs must, however, have "the same essential characteristics" as the claims of the proposed class. *See id.*

Lisle and IAWC do not dispute that the Srails and Brzeczeks can satisfy the typicality requirement for the proposed Schoolchildren Class. As parents of children attending the two schools, their claims are identical to those of other parents of schoolchildren, in that they arise from the same course of conduct (Lisle's alleged failure to ensure that the Schools have adequate water pressure and volume to fight fires) and are based on the same legal theory (deprivation of rights under the Equal Protection Clause and the Illinois Constitution and Illinois common law).

The Court concludes that the named plaintiffs satisfy Rule 23(a)(3)'s typicality requirement for the proposed Schoolchildren Class.

Lisle and IAWC argue that the named plaintiffs' claims are not typical of those of the Residential Class. The Srails and Brzeczeks all live in Oak View, which is within the village limits of Lisle, but over half of the members of the proposed Residential Class reside in Meadows, which is in unincorporated Lisle. Lisle and IAWC contend that for this reason, the named plaintiffs' claims do not share the same "essential characteristics" as those of Meadows residents. Lisle/IAWC Resp. at 11.

First, Lisle and IAWC contend that different legal standards apply to Lisle's decisions not to extend utility service to, respectively, Oak View and Meadows. They argue that although Lisle's actions are reviewed under a "rational basis" test with respect to the claims of Oak View residents, its actions with respect to the Meadows residents should be governed by a different standard. Lisle and IAWC cite *Schroeder v. City of Grayville*, 166 Ill. App. 3d 814, 817, 520 N.E.2d 1032, 1034 (1988), for the proposition that a municipality has no obligation to extend service to an area outside its borders that it has not elected to serve, absent a contractual undertaking to do so, and that it is only prohibited from discriminating unreasonably with respect to rates or services within an area when, Lisle and IAWC argue, it "has elected to extend utility service to a given unincorporated area." Resp. at 11 n.6. Assuming that *Schroeder* is properly read as Lisle and IAWC argue, a question the Court need not address at this juncture, it does not undercut a finding of typicality. Plaintiffs' claim is that they were treated differently from other incorporated and unincorporated areas of Lisle, and in this regard their claims have the same essential characteristics of those of the other class members.

Second, Lisle and IAWC argue that there are significant factual distinctions between the claims of Oak View residents like the Srails and Brzeczeks and those of Meadows residents. For example, Lisle and IAWC contend that under Illinois statute, before a municipality may provide water service to an area outside its corporate limits, a majority of that area's property owners must petition the municipality for service. Because the Srails and Brzeczeks all live in Oak View, Lisle and IAWC point out, they faced no such requirement. And even with a non-residents' petition in hand, Lisle and IAWC contend, a municipality retains discretion in deciding whether to provide water service outside its corporate limits. Again, however, given plaintiffs' claims of differential treatment as compared with others similarly situated, this argument does not undermine a finding of typicality.

Lisle and IAWC also contend that the named representatives' claims are atypical of the claims of Meadows residents because Lisle requires persons living in unincorporated areas to sign pre-annexation agreements (providing that the property will be annexed once the corporate limits of Lisle are contiguous to it) before it will supply services to them. They argue that certifying the Residential Class would therefore "almost certainly foist annexation upon residents of the Meadows" along with "its attendant cost of municipal taxes and other related charges." Lisle/IAWC Resp. at 12. Whether Meadows residents wish to be annexed, Lisle and IAWC contend, is an issue unique to those residents that the named plaintiffs do not face. The flaw in this argument is that because of the application of Rule 23(b)(3), the only provision under which plaintiffs seek class certification, no Meadows resident would be compelled against his or her will to be a party to a lawsuit as a result of which he or she could be forced to connect to Lisle's municipal water system or be annexed to Lisle. Because of Rule 23(b)(3)'s notice requirements,

every proposed class member will have the ability to opt out of any class that may be certified. Proper disclosure in the notice that must be sent to class members can and will ensure that all are fully informed of the implications of class membership. In any event, the record at present reflects that non-residents are not required to sign pre-annexation agreements until they actually choose to connect to the municipal water supply. *See* Lisle/IAWC Mem. Ex. 25, Dep. of Joseph Broda, 201:20-23.

The claims of the named plaintiffs and the claims of Residential Class members in both Oak View and Meadows involve the same course of conduct–Lisle's alleged failure to connect them to the municipal water supply or otherwise provide them with a water supply adequate to fight fires. In addition, the claims of the named plaintiffs are based on the same underlying legal theories (violation of the Equal Protection Clause, negligence, and improper taking under Illinois law), whether they live in Oak View or Meadows. At present, it does not appear to the Court that matters unique to the claims of the Meadows residents will become a significant focus of the litigation.

That said, the differences between Oak View and Meadows residents do give the Court concern regarding the appropriateness of having the case proceed with a unitary residential class as opposed to two separate classes. The Court will discuss this point further in the following section of this decision, concerning adequacy of representation, a point that sometimes overlaps with the issue of typicality. *See Amchem Prods.*, 521 U.S. at 626 n.20 ("The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that

the interests of the class members will be fairly and adequately protected in their absence.'")

(quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). For the present,

the Court concludes that the named plaintiffs' claims are typical of those of the Schoolchildren

Class and of those of the part of the proposed Residential Class consisting of Oak View residents.

The matter is much closer with regard to Meadows residents who are part of the proposed class, a

point that the Court need not decide definitively in light of its conclusions on the issue of

adequacy of representation.

   **d.**      **Adequacy of representation**

   Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent the class as

a whole. *See* Fed. R. Civ. P. 23(a)(4). To evaluate whether plaintiffs have fulfilled this criterion,

the Court looks at both "'the adequacy of the named plaintiff's counsel, and the adequacy of

representation provided in protecting the different, separate, and distinct interest' of the class

members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (citing *Sec'y of Labor v. Fitzsimmons*,

805 F.2d 682, 697 (7th Cir. 1986)). A named plaintiff is generally considered to be adequate so

long as his or her claims neither conflict with nor are antagonistic to those of other class

members. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

   Lisle and IAWC do not dispute plaintiffs' contention that their lawyers are adequate

because they have substantial class action experience, have been appointed class counsel in

several major cases, and have obtained multi-million dollar recoveries for classes they have

represented. The Court has no doubt that plaintiffs' counsel will be able to fairly and adequately

litigate the case on behalf of both proposed classes.

   Lisle and IAWC do dispute, however, that the Srails and Brzeczeks are adequate

representatives for either class. They contend that many absent class members may not want to be connected to Lisle's municipal water system or receive a new water system. As evidence, they note that only one out of nineteen Oak View homes offered an opportunity in 2006 to connect to the Lisle water mains and be removed from IAWC's system accepted the offer. Additionally, they state that "only 162 of the 403 homes in Oak View" that Mrs. Srail contacted as part of a 2006 letter-writing campaign asking the IAWC to discontinue water service signed such letters. Lisle/IAWC Resp. at 14. Lisle and IAWC contend that this record "strongly suggests that many–and perhaps most–residents of Oak View and Meadows may not want" the injunctive relief plaintiffs seek. *Id.* at 13.

The Court cannot draw such an inference based on the present record. According to plaintiffs, in June 2006, when eighteen families given the option of paying thousands of dollars to connect to the Lisle municipal water chose not to do so, the families were unaware of the alleged inability of IAWC's water system to fight fires in their homes or the nearby schools. Lisle and IAWC argue that allegations regarding the water system's firefighting insufficiency were already available to the public in a report from Lisle's Water Task Force on Lisle's website, and that Lisle Fire Chief Freeman had first reported his concerns to the Task Force a year earlier. However, plaintiffs note that the Task Force was created to investigate high water and sewer prices, not fire protection issues, and that the ensuing report made only a "modest reference" to fire protection concerns near the junior high school. Pl. Resp. to Surreply at 3. In short, the fact that eighteen families in the proposed Residential Class decided not to accept an offer to pay to connect to Lisle's water system, when they may well have been entirely unaware of the core allegations underlying this suit, does not suggest that the injunctive relief plaintiffs seek would be

unacceptable to most of the class, let alone that the plaintiffs are inadequate class representatives.

The Court similarly rejects the argument of Lisle and IAWC that the results of Mrs. Srail's letter-writing campaign demonstrate widespread opposition to plaintiffs' desired relief. First of all, positive responses from 162 homes is a significant number, especially in view of the fact that the letter Mrs. Srail sent concerned only ownership of the water system and made no mention of fire safety issues. Furthermore, it is entirely possible that even more homeowners would have sent in favorable survey responses had the letter-writing campaign been allowed to continue; once Mrs. Srail informed Lisle at a board meeting that she had received 162 favorable responses, Lisle directed her to cease her survey work and hire her own attorney if she wished to continue to pursue connection to the Lisle water system. *See* Pl. Reply at 8. In addition, Lisle and IAWC seem to ignore the fact that plaintiffs are seeking not only injunctive relief, but damages. Lisle and IAWC have offered no indication that any residents of Oak View and Meadows, let alone most of them, would have any opposition to pursuit of monetary relief.

Lisle and IAWC speculate about why more potential absent class members "have not voiced support for a change in water service" and suggest they may be concerned about the potential costs, either arising from injunctive relief or, indirectly, from increased taxes if plaintiffs prevail. Lisle/IAWC Resp. at 14. Noting that plaintiffs have admitted they expect to bear some costs associated with a change in their water system, Lisle and IAWC argue that the Court cannot assume that others share plaintiffs' willingness to bear costs. Aside from the speculative nature of this argument, the point is not particularly significant in determining whether to certify a Rule 23(b)(3) class in the first instance. If Lisle and IAWC are right, and absent class members truly do not wish to bear the costs that might result from a victory, they will have the opportunity to opt

out of the litigation. The notice to potential class members will be required to contain adequate "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)). If significant numbers of class members opt out, it may become necessary to revisit the subject of class certification or the issue of the appropriateness of a class-wide request for injunctive relief. For purposes of initial certification, however, Rule 23 does not require a court to find that most class members will not opt out.

Lisle and IAWC also contend that the Srails and Brzeczeks are inadequate class representatives because their claims rely on the theory that all of the Residential Class members own the subject water systems. Lisle and IAWC go on to argue that plaintiffs' theory subjects potential class members to the full implications of being "public utilities" under Illinois law, with all the burdens that such status entails. As a preliminary matter, the assertion that all of plaintiffs' claims turn on this theory appears to be incorrect. From the Court's review, it appears that the "ownership" theory is critical only to plaintiffs' Illinois Takings Clause claim. In addition, Lisle and IAWC's arguments about the ramifications of being a utility are of no consequence regarding the named plaintiffs' adequacy as representatives of the class; these points apply equally to all class members. Finally, plaintiffs are not seeking to operate the water system supplying their properties; they are simply asserting that they own the water mains on their properties and that they want water to be supplied to their properties from a new system.

Plaintiffs contend that the Srails and Brzeczeks are adequate class representatives for the entire Residential Class because they live within the Residential Class area and confront the same

health and safety threats as other members of the Residential Class.  It is true that the residents of Oak View and Meadows are supplied by the same IAWC water system.  The factual distinctions between Oak View and Meadows residents previously discussed give rise to a legitimate concern, however, that the Srails and the Brzeczeks are not adequate representatives of Meadows residents:  Oak View residents might well have an incentive to try to settle their own claims at the expense of those of Meadows residents or to discount arguments by Lisle focused on the appropriateness of any decision not to connect the Meadows subdivision, which is outside of Lisle's corporate limits, to the municipal system.

The Court concludes that although the named plaintiffs have established their adequacy as representatives of the proposed Residential Class consisting of Oak View residents, they have not done so with respect to the claims of Meadows residents.  For this reason, the Court will not certify a Residential Class including Meadows residents unless and until a new named plaintiff or plaintiffs from Meadows is added to the case who is ready, willing, and able to represent a separate Meadows sub-class and who otherwise satisfies Rule 23(a)(4)'s adequacy-of-representation requirement.

Lisle and IAWC contend that the Srails and Brzeczeks cannot adequately represent the Schoolchildren Class if they also represent the Residential Class.  They argue that representation of both classes by the same individuals would create a conflict of interest, because injunctive recovery for the Residential Class would impose costs on members of the Schoolchildren Class living outside of the Residential Class area (presumably, although not explicitly stated, through taxes on residents of the relevant school districts to cover the cost of relief).  Plaintiffs respond that under this reasoning, a resident could never assert a class claim against his or her

municipality unless all village residents were class members.  The Court agrees; any indirect cost that injunctive relief for the Residential Class might impose on members of the Schoolchildren Class living outside of the Residential Class area along with all other Lisle taxpayers is far too speculative to constitute a disabling conflict of interest for class certification purposes.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("A conflict or potential conflict alone will not . . . necessarily defeat class certification–the conflict must be 'fundamental.'") (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001)).  The Court concludes that because plaintiffs have children attending the same schools as the children of other potential members of the Schoolchildren Class, and because any harm they may have experienced as a result of Lisle's actions would be identical to the harm suffered by other potential class members, plaintiffs have established their adequacy as representatives of the proposed Schoolchildren Class.

### 2.      Rule 23(b)(3) Requirements

Plaintiffs seek certification of both classes under Rule 23(b)(3).  They contend that questions of law or fact common to the members of each class predominate over any questions affecting only individual members, and that a class action is superior to other methods of adjudicating each class's claims.

#### a.      Predominance

Common questions predominate when the "proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  Though the two are related, the predominance criterion of 23(b)(3) is "far more demanding" than Rule 23(a)(2) commonality.  *Id.* at 623-24.  "When a class challenges a uniform policy or practice, the validity

of that policy or practice tends to be the predominant issue in the ensuing litigation." *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, *7 (N.D. Ill. Apr. 25, 2007).

Lisle and IAWC contend that individual questions predominate over common questions with respect to the proposed Residential Class because, in their view, residents will have to advance individualized proof concerning several issues. First, Lisle and IAWC argue that each plaintiff will have to prove that he or she (not IAWC) owned the water mains at his or her residence and that Lisle and IAWC, in turn, would have to offer different proofs with respect to each homeowner to defend against these claims. Lisle and IAWC have not shown that the evidence would be individualized to this extent; the ownership issue appears to be one that is identical for all, or at least large groups of class members. In addition, as noted earlier, the only claim to which ownership appears to be critical is plaintiffs' Takings Clause claim under the Illinois Constitution. As a result, any potential need for individual ownership proofs and defenses can hardly be said to be a significant focus of the litigation or to predominate over common questions concerning Lisle and IAWC's conduct.

Second, Lisle and IAWC contend that plaintiffs have no proof of uniform substandard water pressure and that even if some resident of Oak View or Meadows might be able to establish that his or her particular part of the system is substandard, the Srails' and Brzeczeks' "representative" proofs cannot demonstrate a system-wide problem. They further contend that plaintiffs' declaration from Fire Chief Thomas K. Freeman would be inadmissible at trial and is insufficient to support claims about defective residential water service. Plaintiffs have, however, limited their equal protection and negligence claims to the water system's ability to reliably put out fires; they are not asserting claims based on water pressure in their homes.

Plaintiffs also argue that the ultimate issue of whether the Srails or Brzeczeks will prevail on their own claims or the class claims is not an issue the Court should consider in the present context. Pl. Resp. to Surreply at 2. A court need not accept all of the allegations of a plaintiff's complaint as true and "should make whatever factual and legal inquiries are necessary under Rule 23" to ensure that all of its requirements are met. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) . When "some of the considerations under Rule 23(b)(3) . . . overlap the merits," such that it is not possible to evaluate whether plaintiffs satisfy Rule 23(b)(3)'s criteria without probing into the merits, "then the judge must make a preliminary inquiry into the merits." *Id.* A court assessing whether to certify a class should not, however, conduct a general inquiry "into the merits of [a] plaintiff's particular individual claim." *Id.* at 677 (quoting *Eggleston v. Chi. Journeymen Plumbers' Local No. 130*, 657 F.2d 890, 895 (7th Cir. 1981)).

Plaintiffs have made a showing sufficient at this stage to establish they can appropriately assert, on a class-wide basis, the systemic inadequacy of the IAWC water system and that as a result, they satisfy the predominance requirement of Rule 23(b)(3). Plaintiffs have supported their allegations with an affidavit from Fire Chief Thomas K. Freeman and the report of plaintiffs' expert Mark T. Glasser. *See* Pl. Reply, Exs. 1 & 2. Fire Chief Freeman states that based upon his review of his fire district's fire flow tests of the IAWC system, as well as the tests Gasser conducted, "water flows remain insufficient in representative areas to provide reliable and adequate fire fighting protection throughout the Oak View and Meadows subdivisions." *Id.*, Ex. 1 at 2. Gasser's report, which he completed after reviewing "documents received during discovery" as well as "all available historical hydrant flow test results" and his "own hydrant flow tests," concludes that the water system operated by IAWC in Oak View and Meadows is and has

been "inadequate and unreliable for fire fighting purposes" since at least 1993.  *Id.*, Ex. 2 at 2.

Lisle and IAWC contend that Gasser's report "highlights the lack of uniformity in the water system" because eleven of the twelve fire hydrants he tested demonstrated different flows. Lisle/IAWC Surreply at 2.  They argue that the evidence plaintiffs present in support of their class allegations is inadequate to demonstrate predominance, and that under *Szabo*, the facts plaintiffs set forth in their expert report "cannot be ignored when determining . . . whether . . . individual hearings relating to water flow would be necessary to determine whether any particular class member suffered any compensable injury (thus destroying predominance)."  *Id.*  Gasser's report suggests, however, that the inadequacy of fighting fires in each class member's home is not determined by the flow of the nearest fire hydrant.  The hydrants in Oak View and Meadows with inadequate water flow for residential fire protection were "dispersed throughout the Class area," and, according to Gasser, the twenty-five percent failure rate "indicates that the inadequate water supply for fire fighting purposes is a systemic issue throughout the Illinois American system in the Class area."  *Id.* at 5.

Based on these submissions, plaintiffs have made a satisfactory showing that potential variations in flow from different hydrants in the Class area do not defeat the predominance of common issues over individual ones.  The question of whether plaintiffs ultimately will prevail is not one the Court can or should determine at this time, and it does not control whether plaintiffs have met the predominance requirement of Rule 23(b)(3).

Finally, Lisle and IAWC contend that any proof of whether particular persons ever asked to be connected to Lisle's system–one of the assertions on which Lisle and IAWC say an Equal Protection claim must be premised–must be individualized.  Even if that is a requirement, it is

highly unlikely to occupy much if any time in either pretrial discovery or at trial. In any event, as plaintiffs note, their equal protection claim does not depend on proof that particular individuals asked Lisle to provide them with municipal water service.

Lisle and IAWC contend that the Schoolchildren Class also cannot satisfy the predominance requirement of 23(b)(3) because the class's purportedly shared concern about the water system has been rendered moot by later developments. Specifically, Lisle and IAWC note that IAWC has made ongoing upgrades of the portions of the water main surrounding the schools, replaced many hydrants, and created a mechanism allowing water to flow from Lisle's system to the IAWC system when necessary. As a result of all of these changes, they contend, recent testing reveals adequate water pressure in the hydrants serving the two schools.

The Court notes initially that even if Lisle and IAWC are correct, the point they make is plainly common to all class members and does not suggest that individual issues predominate. And the notion that the proposed class faces no ongoing risk of harm focuses on whether plaintiffs will win the case, not Rule 23(b)(3)'s predominance requirement. In any event, to the extent the issue is one that is appropriate to address at this stage of the case, the declaration of Fire Chief Freeman and the deposition of Village Manager Sprecher, both of which suggest that the water system servicing the schools is inadequate to fight fires, are sufficient to sustain plaintiffs' burden of showing that common issues predominate. The questions of the adequacy of the water system supplying the Schools and the validity of Lisle's actions with regard to the system predominate over any individualized questions.

For these reasons, the Court finds that plaintiffs have satisfied the predominance requirement of Rule 23(b)(3) for the Schoolchildren Class and for a Residential Class consisting

of Oak View residents.

**b.     Superiority**

A class action is a superior method of adjudication when "economies of time, effort, and expense" are achieved "without sacrificing procedural fairness." *Amchem Prods.*, 521 U.S. at 614.  Contrary to Lisle and IAWC's contentions, the Court finds that plaintiffs have shown that a class action is the superior method for pursuing plaintiffs' claims with respect to both proposed classes.  Given the numbers of potential class members in each class, this is a case in which "class action treatment is appropriate and . . . permitted by Rule 23 [because] the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

Lisle and IAWC contend that the proposed Residential Class fails to satisfy the superiority requirement for two reasons:  manageability problems and the superiority of the Illinois Commerce Commission ("ICC") as a forum for resolving plaintiffs' complaints.  Lisle and IAWC's argument concerning manageability revolves around proofs of ownership, substandard service, histories of service change requests, and damages.  The Court has already addressed all but the last of these issues.  Lisle and IAWC contend that plaintiffs' individual claims may have significant value if the deterioration to their properties is as severe as alleged, and that determining these values would require complex individualized calculations and proofs of ownership.  Lisle and IAWC also contend that plaintiffs' claims for emotional distress damages are ill-suited to class-wide proof.  In their reply brief, however, plaintiffs have limited the compensatory damages they seek to those attributable to the rate differential between IAWC's

and Lisle's respective charges for water service. Pl. Reply at 17. As a result, Lisle and IAWC's arguments here are beside the point; rate differential calculations are likely to be simple to make on a class-wide basis.

Lisle and IAWC also argue that both proposed classes fail to satisfy the superiority requirement because the issues of repairs to existing water systems and rate-related refunds fall within the jurisdiction of the ICC. However, in addition to the fact that the ICC does not possess jurisdiction over Lisle–the only defendant–because it is not a public utility, the ICC lacks statutory authority to adjudicate class action claims. *See* 83 Ill. Admin. Code § 200.95 (2008).

In sum, there are hundreds of potential class members, and separate adjudication of each of their claims would impose undue and unnecessary burdens on all parties as well as the Court. Plaintiffs' claims for injunctive relief turn largely on proof of the inadequacy of the current water system and the circumstances of Lisle's previous water main extensions. Their claims for the compensatory damages they seek are also well-suited for class-wide proof because they will require a comparison of IAWC's and Lisle's historical water rates and charges. The Court agrees and concludes that class adjudication would be a superior method for adjudicating the claims of both the Oak View-based Residential Class and the Schoolchildren Class, preserving judicial resources and litigation costs without unfair prejudice to Lisle or anyone choosing to opt out of a class.[4]

## Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for class certification

---

[4] The Court will not hesitate to reexamine this finding or other findings made in this decision, if requested, once the number of opt-outs has been identified.

[docket no. 72] as to the proposed Schoolchildren Class and certifies a class consisting of all persons with children attending Lisle Junior High School, Schiesher Elementary School as of the fall of 2007. The Court also certifies a class consisting of all individuals who own or reside in residential property in the Oak View subdivision of Lisle. Subject to the identification of one or more class representatives from Meadows and a showing that such person or persons meets the requirements of Rule 23(a)(4), the Court will certify a class consisting of all individuals who own or reside in residential property in the Meadows subdivision of unincorporated Lisle.

The parties are directed to appear for a status hearing on February 19, 2008 at 9:30 am for the purpose of addressing the subjects of class notice and a schedule for the completion of discovery. The parties are also directed to meet and confer prior to that date and to submit proposals for class notice to the Court by no later than February 15, 2008.


                                        _____/s Matthew F. Kennelly_____
                                        MATTHEW F. KENNELLY
Date: February 4, 2008                  United States District Judge