**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SUSAN SRAIL, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 07 C 2617** |
| ) | |
| **VILLAGE OF LISLE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Susan Srail, Jeffrey Srail, Janeen Brzeczek, and Ronald Brzeczek have sued the Village of Lisle on behalf of themselves and a class of residents in Lisle's Oak View subdivision. They allege that Lisle violated their rights under the Equal Protection Clause of the United States Constitution (Count 1) and Illinois common law (Count 2) in making decisions concerning the water system that supplies Oak View. On May 30, 2008, the Court certified a class consisting of residents of the Oak View subdivision. Lisle has moved for summary judgment on both of plaintiffs' claims. For the following reasons, the Court grants Lisle's motion as to plaintiffs' equal protection claim and dismisses their state law claim for lack of supplemental jurisdiction.

**Facts**

Because Lisle has moved for summary judgment, the Court views the facts in the light most favorable to plaintiffs and draws reasonable inferences in their favor. *See*

1

*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987).

Although Lisle has a municipally-owned water system, that system does not serve the approximately 400 families who reside in Oak View. Instead, as part of a 1995 contract called the Wheeling Agreement, Illinois-American Water Company pays Lisle to "wheel" (*i.e.*, transport) Lake Michigan water that IAWC purchases from the DuPage Water Commission through Lisle's own municipal system to IAWC's intake. IAWC then transmits and supplies that water to Oak View through IAWC's water mains.

In their fourth amended complaint, filed on June 11, 2008, plaintiffs allege that the IAWC system does not deliver adequate water pressure or volume to fight fires in their subdivision, endangering plaintiffs and the class. Plaintiffs contend that Lisle is and has been aware of these problems and that they and certain other class members have requested that Lisle extend its municipal water system into Oak View (or connect them to the Lisle system). In spite of these requests and in spite of Lisle's provision of sufficient fire protection to other citizens within and adjacent to Lisle, plaintiffs contend, Lisle has refused to extend its municipal water system into Oak View to protect residents against the threat of fire.

Plaintiffs also assert that without the 1995 Wheeling Agreement between Lisle and IAWC, IAWC would be unable to provide Lake Michigan water to Oak View. According to plaintiffs, the only source for Lake Michigan water is through Lisle, and by entering into the Wheeling Agreement, Lisle authorized IAWC to be the sole supplier of water to Oak View. Plaintiffs contend that IAWC, in failing to properly maintain the water system in Oak View and to comply with applicable legal standards, has breached certain terms of its Wheeling Agreement with Lisle, but that Lisle has not enforced the

agreement's terms.

Plaintiffs claim that they and the class have been damaged by Lisle's refusal to extend the municipal water system into Oak View and to enforce the terms of the Wheeling Agreement with IAWC, in that IAWC has charged them water usage rates approximately three times the rates that Lisle charges residents for use of the municipal water system.

In Count 1, plaintiffs contend that Lisle's refusal to supply water to Oak View at adequate firefighting pressure and volume, despite supplying water to other, similarly situated persons and entities within Lisle and its unincorporated areas, deprived plaintiffs and other class members of their rights under the Equal Protection Clause. In Count 2, plaintiffs make a similar claim against Lisle for common law negligence. Plaintiffs allege that Lisle undertook a duty to ensure sufficient fire-fighting water for other Lisle residents and others living adjacent to Lisle, that Lisle is obligated to supply such water on a non-discriminatory basis, and that Lisle breached this duty and acted discriminatorily when it failed to make the municipal water system available to Oak View and to enforce the terms of the Wheeling Agreement.

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in its favor. *Anderson v.*

3

*Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## 1.    Equal protection claim

An equal protection violation sometimes involves discrimination based on membership in a suspect class or denial of a fundamental right. In such cases, a court examines the claim by applying the so-called strict scrutiny test. *See Martin v. Schwano-Gresham Sch. Dist.*, 295 F.3d 701, 712 (7th Cir. 2002). In this case, neither of these factors is present; residents of Oak View are neither a suspect nor a quasi-suspect class, and water service and fire protection are not fundamental rights. *See Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991) ("We do not consider the right to continued municipal water service such a fundamental right"); *Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir. 1984) ("The Constitution creates no positive entitlement to fire protection.").

For this reason, the rational-basis standard of review applies to plaintiffs' equal protection claim. *See Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006) (citations omitted). To prevail on their claim, plaintiffs must prove that: 1) Lisle intentionally treated them differently from others similarly situated; 2) because of their membership in the class to which they belong; and 3) the difference was not rationally related to a legitimate state interest. *Id.* at 650-51 (citations omitted).

Plaintiffs contend that they are proceeding under a "class-of-one" theory, under

which (they argue) they need not establish that they were treated differently because of their membership in a class. The Supreme Court held in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and affirmed recently in *Engquist v. Oregon Department of Agriculture*, 128 S. Ct. 2146, 2153 (2008), that an individual may state an equal protection claim under the "class of one" theory if she has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. The Court explained that the rationale for allowing such claims is that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* (internal quotation marks and citations omitted).

In "class of one" cases since *Olech*, the Seventh Circuit has at times required proof of illegitimate animus or illegitimate personal reasons for the defendant's actions in addition to the absence of a rational basis; at other times, it has described this as an alternative to the requirement of no rational basis. *See Smith*, 457 F.3d at 652 (collecting cases); *compare Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005) ("The paradigmatic 'class of one' case . . . is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.") *with Lunini v. Grayeb*, 395 F.3d 761, 768 (7th Cir. 2004) (stating that a "class of one" claim may be proven if either "there is no rational basis for the difference in treatment *or* the

cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant") (emphasis added) (citations omitted).

Lisle contends that because plaintiffs have not alleged either animus or improper motives and because this case has now been certified as a class action, the "class of one" standard does not apply. Although plaintiffs have not cited (and the Court has been unable to find) other instances in which certified classes have been permitted to pursue a class-of-one claim, the Supreme Court stated in *Olech* that "[w]hether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis." 528 U.S. at 564 n.1. Based on this statement, it seems theoretically possible that plaintiffs could pursue their class claims against Lisle under a "class of one" theory, even though this is more like a class of 400. The Court need not, however, reconcile the Seventh Circuit's "class of one" precedent in this case. As it turns out, the second element of regular rational basis review—intentional differential treatment based on plaintiffs' membership in a class—is not dispositive here.

Though they essentially agree that Lisle treated plaintiffs differently from some other groups (in that Lisle provides municipal water to some of its residents but not to Oak View), plaintiffs and Lisle dispute which of those other groups constitute appropriate comparators for purposes of the Court's rational basis review. Plaintiffs contend that all 5,800 households served by Lisle's municipal water system are relevant comparators; Lisle asserts that the Court should compare Oak View with the Front/Westview/Reidy area and the subdivisions of Woodridge Estates and Lisle Farms. The parties further dispute whether plaintiffs are, in fact, similarly situated to

6

any of these comparators. Again, however, the Court need not decide this issue to resolve defendant's motion. The Court will assume, for the purpose of this motion, that plaintiffs are similarly situated to the rest of Lisle and that Lisle treated plaintiffs differently based on their residence in Oak View. With those assumptions, the Court turns to the question whether Lisle's discriminatory treatment had a rational basis.

The rational basis test is a lenient one. Lisle's actions or inactions "'cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose.'" *Smith*, 457 F.3d at 652 (emphasis in original) (quoting *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (citations omitted)). The "legitimate purpose" need not be a rationale that the governmental entity expressed at the time; indeed, governmental action may be found to be rational even if no reason was given for the action. As the Seventh Circuit noted in *Smith*, the governmental entity is not limited, in defending the rationality of its action, to any rationale it may have set forth contemporaneously. *Id.* at 652. Rather, it may "defend the rationality of its action on any ground it can muster." *Id.*

Consequently, the plaintiff in an equal protection case (like this one) not involving a suspect or quasi-suspect class or a fundamental right faces an uphill battle. In such a case, "the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal quotation marks and citations omitted). Thus, in deciding Lisle's motion for summary judgment, the Court must determine whether plaintiffs have shown there are genuine

issues of material fact as to the rationality of each of the bases Lisle urges as justifying

not extending its municipal water system into Oak View, not taking over IAWC's system

by asserting ownership on behalf of Oak View residents,[1] and not enforcing the terms of

its Wheeling Agreement with IAWC.[2]

### a.     Extending Lisle's municipal water system into Oak View

Lisle offers several rationales that it contends justify its decision not to extend its

water mains and hydrants throughout Oak View.  It is only necessary, however, for the

Court to deal with one of them.

Lisle argues that its decision not to extend the water system into Oak View is

justifiable on cost-related grounds.  It is undisputed that extension of the system would

have been an expensive undertaking costing Lisle several million dollars.  Lisle says

that it reasonably believed that it would be unable to recoup that cost and that this was

a rational basis not to extend the water system to Oak View.

Lisle did, in fact, consider extending the system throughout Oak View several

years ago, and it hired financial consultants to determine how to recoup its costs.  The

consultants recommended that Lisle finance the extension by designating Oak View as

a Special Service Area (SSA), issuing SSA bonds, and splitting the total cost among all

---

[1]  Although plaintiffs' fourth amended complaint does not specifically complain of Lisle's failure first to assert ownership of the IAWC system on behalf of Oak View residents and second, to subsequently replace the entire system, defendants addressed this issue in their brief, so the Court will consider it as well.

[2]  As Lisle notes, it does not have a Wheeling Agreement with any water companies with respect to any other residents, so there are no comparators for the purpose of an equal protection claim.  However, for purposes of this motion, the Court will assume that there are comparators and will evaluate Lisle's stated grounds for not regulating IAWC through the Wheeling Agreement.

Oak View homeowners through a multi-year tax based on each home's assessed value. Lisle ultimately rejected this plan, perceiving a lack of support from the subdivision's residents, who (Lisle contends) did not want to shoulder the entire cost of the extension.

Lisle says that it also considered financing an extension of its water system into Oak View using the "frontage fee" method specified by a village ordinance—a method it has used with some prior system extensions—but that it rejected that idea after only one of nineteen Oak View homeowners living adjacent to existing Lisle water mains accepted the village's offer to connect them to the Lisle system on that basis. Plaintiffs note, and Lisle acknowledges, that in contrast to prior and arguably similar situations, the village did not survey or poll all Oak View residents but instead limited its "survey" to the nineteen homeowners in question. Lisle contends, however, that using these nineteen homes as a litmus test to gauge overall interest was rational and thus not indicative of an equal protection violation. The Court agrees. Under established law in this Circuit, the Equal Protection Clause does not inexorably require a governmental entity to follow its own precedent. *See Smith*, 457 F.3d at 653-54 ("Government does not lose the right to enforce a legitimate and rational distinction by virtue of not having enforced that distinction in an unrelated matter years earlier.").

Plaintiffs note that Lisle did not consider cost a determinative factor when it extended its water system to an area called Lisle Farms, but for the reason just noted, that does not require Lisle to act in that same way in other situations, even arguably similar ones. Cost is a rational concern that justifies differential treatment in this situation. *See Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677,

9

686-87 (7th Cir. 2005) (finding that the "significant expense" that would accompany extending a busing benefit was "rational basis enough to justify" a decision not to extend it). In fact, the Lisle Farms precedent lends support to Lisle's claim that its actions vis-a-vis Oak View were rational: it spent $400,000 to extend its water mains to Lisle Farms but ended up getting only $40,000 back from the four residents who chose to connect to the Lisle system. The Oak View extension would have cost Lisle about ten times as much as the Lisle Farms extension; it was rational for the village to believe that it would take a financial bath if it acted as it had in that situation.

In sum, given the fact that estimates for the Oak View extension were in the neighborhood of $4 million, it was rational for Lisle to decide not to extend its mains after it perceived that residents would be unwilling to pay the costs involved via designation as an SSA or otherwise. The Court also notes that it is undisputed that Lisle had not previously extended its water mains into areas in which it would have been competing with an existing private utility, as would have been the case in Oak View, which IAWC already served. Had Lisle simply extended its system into Oak View without some assurance of a significant level of support by the subdivision's residents, it very possibly could have been left holding the bag, if residents faced with a decision whether to pay Lisle significant connection fees chose instead to stick with IAWC.

The Court acknowledges plaintiffs' argument that Lisle's method of gauging public support was not the best method, perhaps not even a particularly informative method, and not the method Lisle had used in the past. Such choices, however, do not implicate the Equal Protection Clause, at least not in a rational-basis case. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative

10

choices." *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993). More particularly, though it may have been more logical to perform a more complete and informative survey, Lisle's lack of symmetry in this situation does not constitute an equal protection violation; "[i]t is not [a] court's province to prescribe the budgetary workings" of a municipality under the guise of equal protection. *Evans v. City of Chicago*, 873 F.2d 1007, 1017 (7th Cir. 1989).

### b. Asserting ownership over IAWC's system in Oak View

Lisle contends that plaintiffs cannot prove that Lisle lacked a rational basis for not pursuing the Oak View Water Task Force's preferred option: asserting on residents' behalf their claim of ownership over the IAWC system, taking over that system, and replacing it. Lisle considered and rejected this option in spring 2006 and again in February 2007 because the issue of ownership was not sufficiently resolved at either point. Lisle contends that subsidizing plaintiffs' legal fees to prove their ownership would be unconstitutional, that it believed IAWC would likely sue it, and that it believed pursuing this option "might turn into a financial black hole" because plaintiffs wanted Lisle to replace every pipe at no cost to residents. Lisle Mot. for Summ. Judg. at 16.

Because plaintiffs do not address this argument in their response, the Court considers the point to have been waived.

### c. Enforcement of the Wheeling Agreement

Lisle contends that its alleged failure to enforce the Wheeling Agreement against IAWC cannot support an equal protection claim because there are no relevant

11

comparators; it did not agree to take on supervision and regulatory control of IAWC in the Wheeling Agreement; the Illinois Public Utilities Act preempted Lisle from enforcing a utility's contractual compliance; and in any event, Lisle believed that it lacked jurisdiction to regulate IAWC because the utility was subject to the jurisdiction of the Illinois Commerce Commission.

Plaintiffs respond that the Wheeling Agreement incorporated obligations that IAWC owed to Lisle, including the operation of the water system in accordance with applicable legal standards. As Lisle argues, however, a municipality in Illinois "is preempted by the [Public Utilities] Act from exerting any control over the operations of" a public utility, whether it "attempts to regulate a public utility by a municipal ordinance, [or] it attempts to do so through a franchise agreement or a contract." *Vill. of Orland Hills v. Citizens Util. Co. of Ill.*, 347 Ill. App. 3d 504, 514, 807 N.E.2d 590, 597 (2004). Plaintiffs seem to concede this point (they provide no case law to dispute Lisle's assertions) but then argue that Lisle's act of entering into the Wheeling Agreement was itself irrational because Lisle knew in 1995 that the IAWC system could not protect the residents of Oak View against a fire. That does not assist plaintiffs in negating the existence of a rational basis. The fact that Lisle may have made a poor decision to enter into the Wheeling Agreement may show that it treated Oak View differently from other areas into which Lisle extended its water system. It does not have much to do with showing how a reasonable jury could find that Lisle's actions lacked a rational basis.

### d.    Conclusion

Plaintiffs have failed to show that there are genuine issues of material fact that

would allow a jury to find that plaintiffs had rebutted each of Lisle's articulated reasons for the disparity of treatment between Oak View and the allegedly comparable areas. For this reason, Lisle is entitled to summary judgment on plaintiffs' equal protection claim.

## 2.    Common law negligence claim

In Count 2, plaintiffs claim that Lisle committed negligence by breaching a duty to ensure sufficient water for fire-fighting purposes "on a non-discriminatory basis."  Fourth Am. Compl. ¶ 37.  Lisle argues that it is entitled to summary judgment on this claim because under Illinois common law, when a municipality supplies water for fire fighting—as opposed to selling water to homeowners—it is operating in a governmental capacity rather than a proprietary capacity.  *Jones v. Vill. of Willow Springs*, 240 Ill. App. 3d 235, 239, 608 N.E. 2d 298, 301 (1992) (stating that although a municipality "may be acting in a proprietary capacity when operating its water system and selling water to individuals . . . when it undertakes to provide water for a purpose related to the benefit of the general public, such as fire fighting . . . it is acting in its governmental capacity") (citations omitted).  When operating in a governmental capacity, Lisle contends, governmental units are protected by the "public duty rule" from "being held liable for their failure to provide adequate governmental services."  *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill. 2d 335, 345, 692 N.E. 2d 1177, 1183 (1998).  As such, Lisle argues, it cannot be held liable for failing to provide water for firefighting purposes.  *See Remet v. City of Chicago*, 509 F.3d 816, 820 (7th Cir. 2007) (citing *Huey v. Town of Cicero*, 41 Ill. 2d 361, 363, 243 N.E. 2d 214, 216 (1968)).

Lisle further notes that the common-law public duty rule has been codified by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS § 10/5-101 - 5-103, under which a municipality "owes the public no general duty of fire protection and that it cannot be liable either for failing to provide or negligently providing fire protection services." *Pierce v. Vill. of Divernon*, 17 F.3d 1074, 1077 (7th Cir. 1994); *see also Remet*, 509 F.3d at 816. Because municipalities are immunized against suit for complete failure to provide fire protection and for insufficient fire protection, Lisle argues that plaintiffs' claim necessarily fails.

In response, plaintiffs essentially argue that theirs is a claim of discrimination, not a claim of failure to provide fire protection services of the type addressed in the cases upon which Lisle relies. Whether or not Lisle owes a legal duty to anyone to provide water service or fire protection, plaintiffs argue, Illinois law prohibits a municipality from "discriminating unreasonably in rates or manner of service" when it elects to provide water service. *Schroeder v. City of Grayville*, 166 Ill. App. 3d 814, 817, 520 N.E.2d 1032, 1034 (1988); *see also Flex-O-Glass v. City of Dixon*, 307 Ill. App. 3d 945, 951, 781 N.E. 2d 730, 735 (1999); *Austin View Civic Ass'n v. City of Palos Heights*, 85 Ill. App. 3d 89, 405 N.E. 2d 1256 (1980); *Keeven v. City of Highland*, 294 Ill. App. 3d 345, 689 N.E. 2d 658 (1998). Whether Lisle's discrimination against Oak View residents was unreasonable is, plaintiffs argue, an issue of fact that cannot be decided at the summary judgment stage.

In reply, Lisle points out that each of the cases plaintiffs cite concerns discrimination in water rates or in manner of service; in each a municipality was either

14

charging customers unequal rates for water or refusing to connect individuals in the municipal service area to the municipal water system.  Lisle distinguishes the cited cases from the present one on the ground that the municipalities in those cases were performing a proprietary function by selling water to individuals, not the governmental function of providing water for fire protection.

Although Lisle's characterization of those cases is generally accurate, one of them presents a slightly different claim—one not having to do with discriminatory rates or with failure to connect to the municipal water supply.  In *Flex-O-Glass*, the plaintiffs asserted that the City of Dixon was obligated to continue to provide sewer service to their manufacturing plant, having undertaken to do so in the first place.  *Flex-O-Glass*, 307 Ill. App. 3d at 946; 718 N.E. 2d at 731.  The argued that the termination of sewer service would constitute a discriminatory violation of the city's "duty to provide such essential services" to nonresidents.  *Id.* at 947, 718 N.E.2d at 161.  The court ruled that plaintiffs failed to state a claim, concluding that "nothing in *Schroeder* . . . abrogates the traditional rule that a municipality owes no initial or continuing duty to supply utilities to nonresidents absent a contractual relationship."  *Id.* at 951, 718 N.E. 2d at 735.  The court implied, however, that if plaintiffs had alleged that they were treated differently from similarly situated parties, it would have reached a different result.  *Id.* at 952, 718 N.E.2d at 736 ("the plaintiffs must nonetheless allege some type of unlawful discrimination that would bring the case within the holding in *Schroeder*.  Absent an allegation that the City treated the plaintiffs differently from other similarly situated nonresidents, the plaintiffs' complaint fails to state a cause of action").  In the Court's

view, *Flex-O-Glass* may be read as suggesting the viability under Illinois law of a claim of discrimination in a municipality's provision of essentially governmental services.

In view of the disposition of plaintiffs' remaining federal claim, the Court is disinclined to make a definitive determination on a quintessentially state law claim, given the lack of clarity in Illinois law on the subject. A federal court may decline to exercise supplemental jurisdiction over any remaining state law claims if, among other reasons, they raise novel or complex issue of State law, or the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(1) & (3). Both of those factors exist in this case.

The Seventh Circuit has ruled that district courts should exercise their discretion "to relinquish jurisdiction over state law claims that remain after the dismissal of federal claims unless . . . (1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided." *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008) (citing *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007)). Because Illinois law permits a plaintiff whose claim has been dismissed in federal court for lack of jurisdiction to refile it within one year in state court, 735 ILCS 5/13-217, dismissal would not pose any statute of limitations problem in this case beyond any that are already inherent in the case. And as the Court has just discussed, it cannot say that it is apparent how plaintiffs' state law claim should be decided. On the other hand, significant judicial resources have been spent on the case as a whole, and the Court has already certified a class. These factors give the Court some pause in deciding whether to dismiss the state law claims for lack of

supplemental jurisdiction. But the deciding factor, in the Court's view, is the novelty of the plaintiffs' state law claim, the lack of definitive Illinois precedent, and the consequent desirability of having that claim determined in an Illinois court. As the Seventh Circuit has stated in a somewhat analogous context, "[i]nnovative state law claims should be brought in state court." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000). Although the case was very close to trial in this Court, the parties will not have to reinvent the wheel in state court; they can simply pick up where they left off.

For these reasons, the Court dismisses Count 2 for lack of supplemental jurisdiction.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment in part [docket no. 268]. Summary judgment is granted in favor of defendant on Count 1 of the fourth amended complaint. The motion is otherwise denied without prejudice. The Clerk is directed to enter judgment granting summary judgment in defendant's favor on Count 1 of the fourth amended complaint and dismissing Count 2 for lack of supplemental jurisdiction. All other pending motions are terminated as moot [docket nos. 286, 287]. The final pretrial conference date of August 13, 2008 and the trial date of August 18, 2008 are vacated.

MATTHEW F. KENNELLY
United States District Judge

Date: August 7, 2008